# 2006 DTA 130

TRIBUNAL DE APELACIONES
REGIÓN JUDICIAL DE SAN JUAN
PÁNEL II

DEPARTAMENTO DE ASUNTOS DEL CONSUMIDOR
Recurrida

v.

SOMAR, S.E.
Recurrente

Núm. KLRA-2006-00513

San Juan, Puerto Rico, a 31 de octubre del 2006

Panel integrado por su Presidenta, la Juez García García,
el Juez González Vargas y la Juez Coll Martí

González Vargas, Troadio, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Comparece Somar S.E. (Somar) mediante el presente recurso de revisión administrativa y nos solicita que revoquemos la Resolución emitida y notificada por el Departamento de Asuntos del Consumidor (D.A.C.O.) el 25 de mayo de 2006. Mediante la referida Resolución, el D.A.C.O. concluyó que las obras de renovación o re-acondicionamiento realizadas por Somar en el condominio El Taíno debían cumplir con los estándares de construcción establecidos en la Ley 130 de 7 de junio de 1967 y que, por tanto, ésta tenía la obligación de garantizar mediante la prestación de fianzas la corrección de todo vicio de construcción. A la luz de lo anterior, el D.A.C.O. ratificó la multa administrativa de $5,000 impuesta a Somar el 26 de agosto de 2005 por

violaciones a la referida Ley.

Examinadas las alegaciones de las partes, así como el derecho aplicable, confirmamos la Resolución recurrida.

# I

La recurrente Somar es una entidad jurídica que ostenta una licencia emitida por el D.A.C.O. para operar como urbanizadora y constructora en Puerto Rico. El 24 de octubre de 2002, Somar compró a la Corporación para el Financiamiento de la Vivienda un condominio llamado *"El Taíno"*, el cual fue construido hace aproximadamente 25 años atrás, el cual consta de 60 unidades. El mismo había sido sometido al régimen de propiedad horizontal en septiembre de 1977. El precio de venta fue $26,000.00 por cada unidad. Luego de ser adquirido por Somar, ésta realizó varias obras de renovación, tales como: instalación de bomba de agua de cisterna, instalación de ascensores nuevos, arreglo de planta de emergencia, pintura del edificio, remodelación e instalación de zócalos, puertas, clósets y piso de los apartamentos, instalación de gabinetes, arreglo y reparación de ventanas, instalación de sistema de incendio, impermeabilización de techo y arreglo del sistema sanitario. Después de realizar las referidas obras, Somar vendió las unidades en $70,000.00 cada una.

Como consecuencia de varias querellas instadas ante el D.A.C.O. por compradores de apartamentos en el Condominio El Taíno, esa agencia le envió una comunicación a Somar notificándole que debía prestar una fianza por cada una de las unidades vendidas a tenor con lo dispuesto en el Artículo 8 de la Ley 130 del 13 de junio de 1967, 17 L.P.R.A. § 50 *et seq.* (*"Ley 130"*). En respuesta a este requerimiento, Somar planteó al D.A.C. O. que a ella no le aplicaba la Ley 130 y que, por tanto, no tenía que prestar las fianzas solicitadas. Somar amparó su alegación en el hecho de que ella no fue quien construyó el edificio de referencia y que su intervención en el mismo se limitó a meras reparaciones que en nada alteraron la estructura, fachada, solidez y planos originales de éste.

El D.A.C.O., no obstante, reiteró su conclusión de que Somar debía prestar las referidas fianzas, ya que su gestión se basó en **desarrollar proyectos de vivienda en gran escala**, lo que constituye la *"cuestión medular"* a ser considerada para examinar la aplicabilidad de la Ley 130. Para apoyar su conclusión, la agencia hizo referencia a la definición de *"urbanizador o constructor"* contenidas en la referida ley, lo que incluye la operación que se realizó en *"El Taíno"*. En vista de lo anterior, le concedió un término de diez días a Somar para que inicie las gestiones conducentes a cumplir *"cabalmente con todas las disposiciones de la Ley 130"*.

Tras una reunión sostenida entre las partes, el D.A.C.O. le concedió a Somar un término adicional de diez días para cumplir con la Ley 130. Ante el incumplimiento de Somar, el 26 de agosto de 2005, el D.A.C.O. le impuso una multa administrativa de $5,000.00 *"por violaciones al Artículo 8 y al inciso (g) del Artículo 9 de la citada Ley Núm. 130"*. Además, el D.A.C.O. ordenó la celebración de una vista administrativa para dilucidar cualquier controversia suscitada por la multa administrativa impuesta, así como cualquier otro asunto.

Luego de varios tramites procesales, los cuales incluyen la celebración de una vista administrativa y la presentación por ambas partes de sus respectivos memorandos de derecho, el D.A.C.O. emitió la Resolución recurrida, en la cual concluyó, entre otras cosas, que la Ley 130 aplicaba a proyectos de vivienda donde incluso no haya construcción alguna, puesto que la construcción de viviendas no es un requisito indispensable para la aplicación de la ley. █

Asimismo, el D.A.C.O. concluyó que Somar se obligó a que la renovación o re-acondicionamiento del Condominio el Taíno cumpliera con los estándares de construcción estatuidos en la Ley 130, por lo que tenía la obligación de garantizar mediante fianza la corrección de todo vicio de construcción que no fuera reparado. Asimismo, ratificó la multa administrativa de $5,000.00 y le ordenó a cumplir con las disposiciones de la Ley 130 referentes a la prestación de las fianzas.

Inconforme con el anterior dictamen, Somar presentó una solicitud de reconsideración ante la agencia, aduciendo, en síntesis, que *"[l]as ventas realizadas por [ésta] no guardan relación alguna con la construcción del edificio, [el cual] tiene más de veinticinco años de construido (sic) por lo que las garantías por defectos ya caducaron hace décadas"*. Adujo, además, que la Ley 130 nada dispone para obligar la reparación de defectos en una edificación que tiene tantos años de construido y que, por consiguiente, no se puede imponer la prestación de una fianza para garantizar una obligación que no existe. Mediante Resolución fechada 15 de junio de 2006, el D.A.C.O. se negó a reconsiderar su decisión.

Insatisfecho con la decisión de la Agencia, el 18 de julio de 2006, Somar instó el presente recurso imputándole al foro administrativo haber errado al determinar que a ésta le aplicaba la Ley 130 *"por haber adquirido y realizado reparaciones en un edificio de más de veinticinco años de construido"* y al haber concluido que tenía la obligación de prestar fianza para responder por los defectos de construcción.

Por su parte, el 13 de septiembre de 2006, el D.A.C.O. presentó su alegato en oposición al recurso. En síntesis, la agencia adujo que el argumento utilizado por Somar para alegar que no le aplica la Ley 130, a saber, que ésta no fue quien construyó el edificio de referencia, *"desvirtúa irrazonablemente el propósito de [esa ley]"* y *"no encuentra apoyo en un análisis cabal de la totalidad de sus disposiciones"*. Veamos el derecho aplicable.

## II

Uno de los pilares de nuestro derecho administrativo es la gran consideración y deferencia de parte de los tribunales a las decisiones de las agencias administrativas. Ello así, debido a que los procesos administrativos y las determinaciones de hechos de las agencias están cobijados por una presunción de regularidad y corrección. De ahí que la revisión judicial de dictámenes administrativos sea limitada y se circunscriba a determinar si hay evidencia sustancial en el expediente para sostener la conclusión de la agencia o si ésta actuó de manera arbitraria, caprichosa o ilegal. *Vélez Rodríguez v. Rivera Delgado*, **2006 J.T.S. 78**; 167 D.P.R. ___ (2006); 3 L.P.R.A. § 2175. El alcance de la revisión judicial comprende tres áreas, a saber: (1) concesión del remedio apropiado, (2) revisión de las determinaciones de hechos conforme al criterio de evidencia sustancial, y (3) revisión completa y absoluta de las conclusiones de derecho. Demetrio Fernández Quiñones, *Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme*, 2da. Ed., Bogotá, Forum, 2001, pág. 534.

Los anteriores señalamientos nacen de dos principios fundamentales contenidos en la Ley Núm. 170 de 12 de agosto de 1988, conocida como Ley de Procedimiento Administrativo Uniforme (*"L.P.A.U."*). 3 L.P.R.A. § 2101 *et. seq.* Primero, que *"[l]as determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo"*. 3 L.P.R.A. § 2175. Segundo, que *"[l]as conclusiones de derecho serán revisadas en todos sus aspectos por el tribunal." Id.*

Ahora bien, jurisprudencialmente se ha sostenido que los tribunales le deben dar gran peso o deferencia a las aplicaciones e interpretaciones de las agencias con respecto a las leyes y reglamentos que administran por lo que no pueden descartar libremente las conclusiones e interpretaciones de derecho. *Asoc. Vec. H. San Jorge v. U. Med. Corp.* 150 D.P.R. 70, 75 (2000). La interpretación administrativa no tiene que ser la única que razonablemente se pueda hacer del estatuto, siendo suficiente que la misma sea razonable y consistente con el propósito legislativo. *Rodríguez v. Méndez & Co.*, 147 D.P.R. 734, 746 (1999). Esta norma se justifica debido a que las agencias cuentan con una vasta experiencia y conocimiento del derecho (*"expertise"*) en relación con las materias que atienden día a día. *Molini v. Negociado*, 115 D.P.R. 183 (1984). La interpretación que del estatuto hagan dichos organismos y los fundamentos que utilicen para sustentar la misma, resulta beneficiosa para los tribunales de justicia al momento de éstos encontrarse en posición de pasar juicio sobre la corrección de las decisiones tomadas por tales organismos. *Associated Insurance Agencies, Inc. v. Comisionado de Seguros de Puerto Rico*, 144 D.P.R. 425, 436 (1997).

En fin, el criterio que debe guiar el proceso de revisión judicial en los aspectos de derecho o de aplicación del derecho a los hechos es el de razonabilidad, en el que se sostengan las interpretaciones administrativas que tengan un fundamento racional en la ley o en la política pública de la misma y en los que la agencia no haya obrado de manera arbitraria, ilegal o en abuso de su discreción. Claro está, cuando se trata de asuntos de derecho que no involucren interpretaciones llevadas a cabo dentro de la especialidad de la agencia, los mismos son revisables sin limitaciones. *Misión Industrial v. Junta de Planificación*, 146 D.P.R. 64, 134 (1998); *Rivera v. A&C Development Corp.*, 144 D.P.R. 450, 461 (1997). Después de todo, no debe olvidarse que es a los tribunales y no a los organismos administrativos a quienes compete interpretar en última instancia las leyes y la Constitución. *O.E.G. v. Rodríguez*, **2003 J.T.S. 51**, 159 D.P.R. ___ (2003).

Al ejercerse el rol de interpretar las leyes debemos tener presente que el criterio fundamental para alcanzar la interpretación más racional de éstas es identificar su propósito o finalidad y la política pública que la inspira. En buena tradición democrática, la ley no es un fin en sí mismo, sino el medio para obtener o alcanzar objetivos legítimos en favor del Pueblo. Por consiguiente, ha de interpretarse atribuyéndole el sentido que mejor responda a la realización del resultado que a través de ella se intenta obtener. Por ello, en el proceso de interpretación no debemos desvincular la ley del problema social cuya solución persigue, pues tenemos el deber de hacer que el derecho sirva propósitos útiles y evitar una interpretación tan literal que lleve a resultados absurdos. *Departamento de la Familia v. Ramos*, **2003 J.T.S. 38**, 158 D.P.R. ___ (2003); *Secretario del Trabajo v. G.P. Industries, Inc.*, 153 D.P.R. 223, 239-240 (2000).

De otro lado, como sabemos, el D.A.C.O. es una *"agencia especializada con personal profesional y técnico altamente competente, para poder vindicar los derechos del consumidor en una forma agresiva y firme..."*. *Raimundi v. Productora de Agregados, Inc.*, **2004 J.T.S. 106**, 162 D.P.R. ____ (2004); Artículo 3 de la Ley Orgánica del Departamento de Asuntos del Consumidor, Ley Número 5 de 23 de abril de 1973, 3 L.P.R.A. § 341b.

Por su parte, en Puerto Rico existe una clara política pública en proteger y fomentar que cada familia tenga acceso a una vivienda cómoda, segura y accesible. Ejemplo de lo anterior es la Ley Núm. 130 de 13 de junio de 1967, 17 L.P.R.A. § 501, según enmendada, cuya administración se le ha encargado al D.A.C.O. Esa ley intenta proteger los intereses de los compradores de vivienda privada en Puerto Rico en el reconocimiento de que por lo general el consumidor es la parte más débil en dicha transacción. Además, intenta prevenir las prácticas indeseables en el negocio de la construcción. Dichas prácticas se enumeran en el Artículo 9 de la Ley, entre las cuales se incluye dejar *"de corregir un defecto de construcción en una vivienda según éste sea definido por el reglamento puesto en vigor por el Oficial de Construcción"*. 17 L.P.R.A. § 509 e.

Bajo esta ley se le confirió al D.A.C.O., entre otras cosas, la facultad de expedir y revocar licencias de urbanizadores, investigar las operaciones, transacciones, cuentas, archivos, documentos y capital de todo urbanizador a los efectos de encontrar si se ha cometido alguna violación a la referida ley. 17 L.P.R.A. § 504. Igualmente, la autoridad fiscalizadora podrá exigir al urbanizador o constructor que *"preste una fianza o seguro por una suma no mayor de diez (10) por ciento del precio de venta de dicha vivienda"*. Esa fianza o seguro *"será para garantizar los gastos de reparación y corrección de los defectos en la construcción..."*. 17 L.P.R.A. § 508. Finalmente, se le confirió facultad al Secretario del D.A.C.O. para, previa notificación y vista administrativa, imponer una multa administrativa no menor de $500.00 ni mayor de $5,000.00 a todo urbanizador o constructor que viole las disposiciones de la Ley 130, sus reglamentos, órdenes o resoluciones emitidas por éste. 17 L.P.R.A. § 546.

El Artículo 1 de la referida Ley 130 define *"urbanizador o constructor"* como sigue:

*"Urbanizador o constructor- Significará toda persona que se dedique al negocio de la construcción en calidad de empresario o principal responsable de la promoción, diseño, **venta**, construcción de obras de*

*urbanización para vivienda*, o de la construcción en grande escala de viviendas, bien del tipo individual o multipisos. El término no incluye al corredor de bienes raíces, por lo cual éste no será responsable por los defectos de construcción de las viviendas construidas y cubiertas por este capítulo.

Incluye a quien asuma la responsabilidad total para la presentación ante la Junta de Planificación de consultas de ubicación y uso de terrenos, y ante la Administración de Reglamentos y Permisos del desarrollo preliminar, planos preliminares y finales para la construcción de las obras en un predio extenso de terreno que habrá de notificarse para la construcción de viviendas (unifamiliares o multifamiliares), o que comisione a otros para realizar cualesquiera de tales actividades.

Además, incluye a quien desarrolle parcelas o lotes de terreno en número mayor que el permitido como notificación simple según las leyes y reglamentos de la Junta de Planificación a la Administración de Reglamentos y Permisos, o quien construya casas o apartamientos para la venta, arrendamiento, u otro uso, en número de veinte (20) como un sólo proyecto.

No incluirá a los Gobiernos de los Estados Unidos, del Estado Libre Asociado de Puerto Rico, sus subdivisiones políticas, las corporaciones públicas ni a los municipios." (Énfasis nuestro). 17 L.P.R.A. § 502 (d),

Con el beneficio de la normativa legal anteriormente expuesta, pasamos a resolver la controversia de autos.

### III

Nos corresponde determinar en este caso si la Ley 130 aplica a situaciones en las que una persona natural o jurídica compra una estructura ya construida y realiza en ella obras de renovación, re-acondicionamiento y modernización para luego venderlas y obtener así una ganancia. En otras palabras, debemos determinar si la anterior actividad está enmarcada bajo la definición de *"urbanizador o constructor"* que provee la Ley 130 y, en consecuencia, determinar si debe cumplir con el requisito de la fianza estatuida en la referida Ley.

Como mencionamos anteriormente, la parte recurrente adquirió un condominio construido hace más de 25 años e hizo en éste varias reparaciones y remodelaciones, luego de lo cual vendió los apartamentos obteniendo con ello una ganancia. El contrato de compraventa utilizado para vender las referidas unidades disponía que en su cláusula catorce que:

*"Acepta la parte COMPRADORA que los saneamientos por defectos de construcción o vicios ocultos serán responsabilidad únicamente, de los ingenieros, arquitectos y contratistas que originalmente construyeron el proyecto conocido como CONDOMINIO RESIDENCIAL Taíno. La responsabilidad de la parte VENDEDORA en términos del alcance de la garantía de construcción, es una LIMITADA, siendo responsable en primera instancia el contratista original que realizó la obra. La responsabilidad de la VENDEDORA se limita al trabajo realizado por ésta relacionado con el apartado número quince (15) de la enmienda al Reglamento del Condominio el Taíno y Declaración de Obras realizadas en el mismo otorgada en San Juan, Puerto Rico, el veintiocho (28) de marzo de 2003 [sic] ante la notario Awilda Enid López-Palau; copia de la cual se le ha entregado a la parte COMPRADORA."*

A su vez, la escritura quince a la cual se refiere el apartado anterior dispone en lo pertinente que:

*"TERCERO: El PROPIETARIO... ha realizado obras, reparaciones y remodelaciones al mismo, sin alterar la estructura, fachada, o solidez del mismo, ni alterar sus planos originales, de forma tal de ponerlo en condiciones aceptables para ser habitado. El PROPIETARIO ratifica que no ha sido el constructor, desarrollador o urbanizador del referido inmueble objeto de la presente. Los trabajos realizados y/o equipos instalados y/o arreglados en varios de los apartamentos y en varias de las áreas comunes son de tipo*

*cosmético, de conservación o modernización...*

*Los referidos trabajos fueron realizados conforme las normas y reglamentaciones vigentes y contaron con los permisos necesarios para ello,[...] Surge de la [...] Certificación, y la Notaria descansa en lo allí expresado, y así lo ratifica el propietario, que no se han realizado movimientos o derrumbes de paredes de carga o maestras y que no se han afectado de forma estructural a elementos comunes o privados del inmueble."*

Amparándose en lo anterior, la recurrente aduce que los compradores quedaron informados de cuáles fueron las obras realizadas por ésta y cuál era el límite de su responsabilidad por los defectos de construcción que presentaran las unidades de vivienda. Arguye además que los compradores aceptaron que el saneamiento por defectos de construcción o vicios ocultos sería responsabilidad únicamente de los ingenieros, arquitectos y contratistas que originalmente construyeron el edificio.

En cuanto al aspecto medular de la presente controversia, a saber, el requisito de prestar fianza estatuido en el Art. 8 de la Ley 130, la recurrente reitera que el mismo no le aplica, toda vez que ella no fue quien construyó el condominio y que sus trabajos en éste no afectaron ningún elemento esencial del edificio, sino que fueron meramente cosméticos, de conservación o modernización. La recurrente alega que para que se le aplique la referida Ley 130 es necesario que la persona o entidad se dedique *"al negocio de la construcción"*, conforme a la definición de *"constructor o urbanizador"* anteriormente transcrita. Es su pretensión que la *"venta de viviendas y la construcción de las mismas están íntimamente ligadas una con la otra y no se pueden considerar aisladamente"*. En síntesis, la recurrente aduce que todas las actividades descritas en la referida definición *"llevan como fin último la construcción de viviendas, [por lo que ninguna de éstas] se pueden interpretar fuera de ese contexto"*. No podemos validar tal interpretación, pues resulta irrazonablemente restrictiva y se aleja del propósito legislativo que inspiró la adopción de esta Ley. Esa interpretación tendría un efecto detrimental para los consumidores de viviendas adquiridas en circunstancias como las de este caso, puesto que los deja en un estado de indefensión ante los defectos que éstas puedan presentar.

La agencia recurrida, a cargo de poner en vigor la Ley 130, concluyó que *"el aspecto de la 'construcción' es meramente uno de los varios que la [ley] regula y el mismo no es pertinente al momento de determinar la aplicación de la ley, pues el legislador había considerado la posibilidad de que la 'construcción' y venta de una propiedad no fueran actos contemporáneos [al disponer] que las garantías ofrecidas por el estatuto comenzarían a decursar a partir de la compraventa de la propiedad y no del momento en que se había completado su construcción"*. En armonía con lo anterior, el D.A.C.O. determinó que al realizar los trabajos de restauración en el condominio, la recurrente debió cumplir con el estándar de construcción dispuesto por la Ley 130 y su reglamento, así como con la obligación de garantizar los vicios o defectos de construcción que surgieran en las unidades de viviendas vendidas por éste a través de la prestación de una fianza. Estamos de acuerdo con la agencia recurrida.

De una mera lectura a la definición provista por la Ley 130 sobre el concepto de *"urbanizador o constructor"*, se desprende que el legislador especificó cuáles eran las personas exentas de la misma. Así, detalló que la definición no cobijaba a los corredores de bienes raíces, al Gobierno de los Estados Unidos, del Estado Libre Asociado de Puerto Rico, sus subdivisiones políticas, las corporaciones públicas ni a los municipios. Ninguna de las exclusiones enunciadas se refiere a actividades como las realizadas por la recurrente en este caso.

Por otra parte, contrario a lo que aduce esta parte, la referida definición incluye situaciones que no requieren necesariamente la previa o posterior *"construcción"* de las unidades de vivienda por parte de la misma persona o entidad. Por ejemplo, la definición incluye *"a quien desarrolle parcelas o lotes de terreno en número mayor que el permitido como lotificación simple..."* y en particular cubre a *"toda persona"* que se dedique al diseño y

venta de viviendas. La enumeración de las actividades que se hace en el primer párrafo de la disposición objeto de análisis, permite concluir que cada una de ellas por sí sola estará dentro de la definición de *"urbanizador o constructor"*. Veamos.

Significará toda persona que se dedique al negocio de la construcción en calidad de empresario o principal responsable de la promoción, diseño, **venta**, construcción de obras de urbanización para vivienda, o de la construcción en grande escala de viviendas… (Énfasis nuestro).

Nótese que la *"construcción de obras de urbanización para vivienda"* o *"la construcción de viviendas en gran escala"* son sólo algunas de las actividades a las que aplica la Ley 130. Esta, sin embargo, claramente también aplica a la venta de viviendas.

Nuestra determinación encuentra apoyo en las expresiones del legislador contenidas en la Exposición de Motivos de la Ley 130, al señalar que *"[u]no de los principios cardinales del propósito de Puerto Rico es que cada familia puertorriqueña tenga un hogar propio"* que sea adecuado y responda a las necesidades, aspiraciones y recursos económicos de nuestros conciudadanos y les permitan *"desarrollar y disfrutar a plenitud su vida familiar y comunal"*. Continuó el legislador señalando que *"[c]orresponde a nuestro Gobierno proteger a sus ciudadanos contra tales prácticas a fin de garantizar que la política pública de que cada familia tenga un hogar propio y adecuado, se cumpla a plenitud en todos sus aspectos…; [por ello] se hace necesario proteger adecuadamente a los compradores de viviendas, prevenir prácticas indeseables en el negocio de la construcción y crear una oficina que se ocupe de promover los objetivos de esta ley"*. Aparte de que el claro lenguaje de la ley cubre actividades como las que trata este caso, el espíritu y propósito de la ley, según se expresa en las anteriores expresiones del legislador, confirman lo que la letra del estatuto dispone.

Resulta, además, lógico que así se interprete. El consumidor es en el marco de la relación que presenta esta controversia la parte más débil y a la que el ordenamiento legal diseñado en su favor manda proteger. Se trata del esfuerzo de una persona o familia en adquirir lo que muy probablemente constituye su principal, y a veces, su única adquisición de valor. En la que ha invertido todo su capital, esfuerzo y esperanza de una mejor calidad de vida para sí y su familia. Cuando se trata de la compra de viviendas de bajo costo, este interés de proteger al consumidor se incrementa, puesto que el esfuerzo en lograr esa compra ha sido mayor, puesto que, de ordinario, son personas de bajos ingresos. Por ello, su dificultad para lidiar y remediar los vicios de construcción en esas viviendas se pueden tornar, no sólo en la ruina de sus legítimas aspiraciones de una mejor calidad de vida, sino en un azaroso proceso para lograr repararlos. O lo que es peor, resignarse a vivir con ellos mientras se ven obligados a continuar pagando la hipoteca que grava su vivienda y quizás también su vida y bienestar.

Del otro lado, tenemos al empresario que, quizás también con un gran esfuerzo, se ha lanzado a la loable actividad de proveer y hacer asequibles viviendas a las familias puertorriqueñas. Sin embargo, se trata de una actividad que puede representar elevadas o, al menos, razonables ganancias para el desarrollador de este concepto de vivienda. No hay duda de que bajo cualquier análisis objetivo representa la parte más fuerte en esa relación. Es natural entonces que cualquier duda que el estatuto pueda tener debe resolverse a favor de la parte más débil que es el consumidor.

Por supuesto que las consideraciones anteriores, meritorias como son, no hubieran podido prevalecer sobre un claro lenguaje en el texto de una ley, a los fines de excluir esta actividad de la aplicación de la Ley 130. Sin embargo, ese no es el caso que nos ocupa. Aquí, tanto el razonamiento previamente expuesto, como la letra de la Ley y la intención legislativa, reman en la misma dirección, la inclusión de proyectos como el llevado a cabo por la recurrente bajo el palio de este estatuto. Se impone, por lo tanto, que confirmemos la decisión del D.A.C. O., que autorizadamente ha determinado la aplicación de la Ley 130 a proyectos residenciales como el presente.

Por último, en cuanto al argumento de la parte recurrente relativo a que cualquier garantía por vicios de construcción ya ha caducado, no es correcto. Una vez rehabilitado el edificio y vendido nuevamente los

apartamentos, según ha ocurrido en este caso, se ha generado un nuevo estado de derecho desconectado de sus antecedentes bajo el régimen anterior del cual nacen nuevas obligaciones y derechos, incluyendo los amparados en la Ley 130. De eso se trata su aplicabilidad a estos proyectos, conforme hemos aquí resuelto. Para ello no es necesario alterar las características estructurales de la edificación, como sostiene la parte recurrente. Una rehabilitación de la magnitud ocurrida en este caso, según determinado por el D.A.C.O., coloca este proyecto bajo el régimen de la Ley 130, sujeto a las obligaciones y exigencias que se derivan de ella. ■

A la luz de lo anterior, concluimos que los errores señalados no fueron cometidos, por lo que confirmamos la Resolución recurrida.

Lo acordó y manda el Tribunal y lo certifica la Secretaria Interina del Tribunal de Apelaciones.

Mildred Ivonne Rodríguez Rivera
Secretaria Interina del Tribunal de Apelaciones

### ESCOLIOS 2006 DTA 130

**1.** Sobre este particular, la agencia concluyó específicamente que: *"La amplitud de la definición de "urbanizador o constructor" expuesta en los párrafos que anteceden confirma cuán abarcador resulta el esquema diseñado por el legislador. No se trata de regular meramente algunos de los aspectos que comprenden el desarrollo de un proyecto residencial, sino de establecer pautas que rijan consistente y uniformemente todas las etapas de dicha actividad comercial, desde la concepción hasta su venta. El aspecto técnico de la construcción de viviendas no es más que uno de los muchos asuntos que la ley pretende regular y dicho aspecto no es un requisito indispensable para la aplicación de la ley, puesto que la definición citada dispone que la ley será de aplicación aun en aquellos proyectos donde no habría construcción alguna, como lo sería en aquéllos donde el desarrollo consistía únicamente en la venta de parcelas o lotes de terreno. En el caso ante nos, Somar, S.E. vendió las unidades de apartamentos del Condominio El Taíno, por lo que sin lugar a dudas está incluido dentro de las definiciones provistas por la Ley."*

**2.** Deseamos establecer que lo aquí resuelto se limita al régimen de la Ley 130 y no pretende prejuzgar situaciones al amparo de la acción decenal, la que se regula por una fuente de derecho distinta y con diferente alcance, por lo que podría estar sujeto a un análisis igualmente diferente. (Véase, art. 1483 del Código Civil, 31 L.P.R.A. & 4124)